IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SCOTT R. KIMBALL,
        Plaintiff,

                                       3:09-cv-06251-PK

                                       FINDINGS AND
v.                                    RECOMMENDATION

MICHAEL J. ASTRUE,
Commissioner of Social Security,
                Defendant.

---

PAPAK, Magistrate Judge:

       This action was filed against defendant Commissioner of Social Security, by plaintiff

Scott Kimball on September 4, 2009. Kimball initially sought review of the Commissioner's

decision finding him not disabled for purposes of entitlement to Disability Insurance Benefits and

Supplemental Security Income. (Case No. 3:06-cv-06318-HU.) In that action the court reversed

the Commissioner's decision, remanding for payment of benefits between March 1999 and

September 2004 and for further proceedings to determine whether plaintiff engaged in substantial

gainful activity from September 2004 forward. On remand, the ALJ again denied benefits for

Page 1 - FINDINGS AND RECOMMENDATION

September 2004 forward, finding in step one of the sequential analysis that Kimball was engaged in substantial gainful activity.   Kimball subsequently brought this action.  On September 15, 2010, I recommended that the Commissioner's decision concerning step one be reversed and recommended that the case be remanded for further proceedings addressing steps two through five of the sequential analysis.  Judge King adopted my recommendation.   On remand, the Commissioner issued a fully favorable decision awarding Kimball benefits.  In January 2011, I granted a stipulated application for attorney fees pursuant to the Equal Access to Justice Act (the "EAJA") in the amount of $3,533.42, which was in addition to the $4,301.36 in EAJA attorney fees awarded to Kimball's counsel in the prior action.  Now before the court is Kimball's unopposed motion (#26) for approval of payment to Kimball's counsel of $10,918.22 in additional attorney fees out of his retroactive benefits award, pursuant to 42 U.S.C. § 406(b).  I have considered the parties' briefs and all of the evidence in the record.  For the reasons set forth below, Kimball's motion should be granted, and payment to Kimball's counsel of $10,918.22 out of Kimball's past-due benefits award should be approved.

## ANALYSIS

Pursuant to 42 U.S.C. § 406(b), Kimball moves for approval of payment of attorney fees to his counsel in an amount equal to 25% of his retroactive benefits award, less the EAJA fee awards already received.  Section 406(b) provides, in relevant part, as follows:

> Whenever a court renders a judgment favorable to a claimant under this subchapter who was represented before the court by an attorney, the court may determine and allow as part of its judgment a reasonable fee for such representation, not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled by reason of such judgment. . . .

42 U.S.C. § 406(b)(1)(A).  By contrast with fees awarded pursuant to the EAJA, a fee-shifting

statute, Section 406(b) fees are paid out of the retroactive benefits awarded to the successful

Social Security claimant. *See id.* Counsel representing Social Security claimants may not seek

compensation from their clients for trial litigation other than through a Section 406(b) fee. *See*

*id.* In the event that both an EAJA fee is awarded and a Section 406(b) fee payment is approved,

the claimant's counsel must refund to the claimant the amount of the smaller of the two

payments. *See Gisbrecht v. Barnhart*, 535 U.S. 789, 796 (2002). Any Section 406(b) fee must

be approved by the court following analysis of its reasonableness before it may be paid. *See* 42

U.S.C. § 406(b)(1)(A).

In *Gisbrecht*, the Supreme Court established that the reasonableness of a 406(b)

contingency fee is not to be determined primarily by reference to the lodestar method which

governs fee-shifting disputes. *See Gisbrecht*, 535 U.S. at 801-802. Instead, to the extent

contingency fee agreements do not provide for fees exceeding 25% of claimants' retroactive

benefits, their terms are fully enforceable subject only to the court's review "to assure that they

yield reasonable results in particular cases." *Id.* at 807. It is the claimant's counsel's burden to

establish the reasonableness of the calculated fee. *See id.*

In assessing the reasonableness of a Section 406(b) fee, courts look first to the

contingency fee agreement itself, and then may reduce the resulting award "based on the

character of the representation and the results the representative achieved." *Id.* at 808. The

*Gisbrecht* court provided, as examples of circumstances that could justify a downward reduction,

situations in which the attorney was responsible for delay or in which "the benefits are large in

comparison to the amount of time counsel spent on the case." *Id.* The court specified that "the

court may require the claimant's attorney to submit, not as a basis for satellite litigation, but as an

aid to the court's assessment of the reasonableness of the fee yielded by the fee agreement, a record of the hours spent representing the claimant and a statement of the lawyer's normal hourly billing charge for noncontingent-fee cases." *Id.*, *citing Rodriquez v. Bowen*, 865 F.2d 739, 741 (6th Cir. 1989) (*en banc*).

The Ninth Circuit addressed the *Gisbrecht* reasonableness analysis in *Crawford v. Astrue*, 586 F.3d 1142 (9th Cir. 2009) (*en banc*). The *Crawford* court reviewed the consolidated appeals of three different actions in which district courts reduced Section 406(b) fees from the amounts requested. In the first of these, claimant Clara Crawford was represented by attorney Brian Shapiro. *See Crawford*, 586 F.3d at 1144. The Administration initially denied Crawford's application for benefits, but following litigation, ultimately awarded her $123,891.20 in past-due benefits. *See id.* at 1145. Although Shapiro and Crawford had entered into a contingency fee agreement that provided for a 25% contingency fee, Shapiro requested a fee of only $21,000, or 16.95% of Crawford's retroactive benefits, representing an amount 3.55 times the amount that would have resulted from a lodestar calculation. *See id.* The district court found no evidence of fraud or over-reaching in the negotiation of the fee agreement, that Shapiro had caused no unnecessary delay, and that Shapiro's lodestar calculations were correct. *See id.* However, the district court found that Shapiro had not met his burden to show that the requested "enhancement" of the lodestar figure was reasonable, because he had not presented evidence of his own firm's success rate in representing Social Security claimants (as opposed to data regarding the success rate of Social Security claimants generally) and because Crawford's attorneys' skill and experience were already reflected in the lodestar figure. *See id.* The court ruled, without explanation, that a 40% "enhancement" over the lodestar figure was reasonable,

and on that basis awarded a fee of $8,270.00, the equivalent of 6.68% of Crawford's retroactive benefits. *See id.*

In the second action of the consolidated appeal, claimant Ruby Washington was represented by attorney Young Cho. *See id.* at 1144. As in Crawford's case, the Administration initially denied Washington's application for benefits, but following litigation, awarded $76,041.00 in retroactive benefits. *See id.* Although Cho and Washington had entered into a contingency fee agreement that provided for a 25% contingency fee, Cho requested a fee of only $11,500, or 15.12% of Washington's retroactive benefits, representing an amount 1.82 times the amount that would have resulted from a lodestar calculation. *See id.* The district court found no evidence of fraud or over-reaching in the negotiation of the fee agreement, that Cho had caused no unnecessary delay, and that Cho's lodestar calculations were correct. *See id.* at 1146. However, as for Crawford, the district court found that Cho had not met his burden to show that the requested "enhancement" of the lodestar figure was reasonable, because he had not presented evidence of his own firm's success rate in representing Social Security claimants, because Washington's attorneys' skill and experience were already reflected in the lodestar figure, and because Cho had not been required to do much work to obtain benefits on Washington's behalf. *See id.* The court ruled, without explanation, that a 40% "enhancement" over the lodestar figure was reasonable, and on that basis awarded a fee of $8,825.53, the equivalent of 11.61% of Washington's retroactive benefits. *See id.*

In the third action of the consolidated appeal, claimant Daphne M. Trejo was represented by attorney Denise Bourgeois Haley. *See id.* at 1144. As in Crawford's and Washington's cases, the Administration initially denied Trejo's application for benefits, but following litigation,

awarded $172,223.00 in retroactive benefits. *See id.* at 1146. Although Haley and Trejo had

entered into a contingency fee agreement that provided for a 25% contingency fee, Haley

requested a fee of only $24,000, or 13.94% of Washington's retroactive benefits, representing an

amount 2.79 times the amount that would have resulted from a lodestar calculation. *See id.* The

district court found no evidence of fraud or over-reaching in the negotiation of the fee agreement,

that Haley had caused no unnecessary delay and that her representation had been excellent, and

that Haley's lodestar calculations were correct, except that 1.5 hours of claimed paralegal time

and 1.4 hours of claimed attorney time had been improperly attributed to the federal action. *See*

*id.* However, as for Crawford and Washington, the district court found that Haley had not met

her burden to show that the requested fee was reasonable, because she had not presented

evidence of her own firm's success rate in representing Social Security claimants, because Trejo's

attorneys' skill and experience were already reflected in the lodestar figure, and because Haley

had not presented evidence that Haley's firm had been precluded from accepting other work in

consequence of Haley's representation of Trejo. *See id.* The court ruled, without explanation,

that a 100% "enhancement" over the lodestar figure was reasonable, and on that basis awarded a

fee of $12,650.40, the equivalent of 7.35% of Trejo's retroactive benefits. *See id.*

   The *Crawford* majority characterized the district courts' decisions as impermissibly

beginning with the lodestar calculation and determining a reasonable fee award by applying

enhancements to the lodestar figure, rather than by beginning with the claimants' fee agreements

and applying any appropriate reductions to the calculated contingency fees to arrive at reasonable

fees. *See id.* at 1150. In addition, the *Crawford* majority found no evidence of substandard

performance or dilatory conduct by the claimants' attorneys, and that the requested fees were not

"excessively large in relation to the benefits achieved." *See id.* at 1151. On the basis of these findings, the *Crawford* majority found that the requested fees – each of which was less than the fee provided for in the applicable contingency fee agreement – were reasonable in each case, and therefore reversed each district court's decision with instructions to award the requested fees. *See id.* at 1151-1152.

As a separate and independently adequate ground for vacating the orders below, the *Crawford* court further noted the district courts' failure to explain the bases for the percentages they found to constitute reasonable enhancements of the lodestar figure in each case. *See id.* at 1152. The *Crawford* court also flatly rejected the district courts' reliance on the attorneys' failure to provide firm-specific historical success rates as a basis for reducing the requested fee awards, and suggested that the reasonableness of a fee award could be measured in part by reference to the risk counsel assumed by agreeing to take on a particular case, given the specific facts of that case. *See id.* at 1152-1153.

Here, the Commissioner initially rejected Kimball's application for DIB and SSI benefits, only to award retroactive and prospective benefits following litigation. Kimball provides evidence he was awarded approximately $75,000 in retroactive benefits and monthly benefits of at least $621. As in the cases reviewed by the *Crawford* and *Gisbrecht* courts, Kimball entered into a contingency fee agreement with her counsel providing for payment of 25% of Kimball's retroactive benefits to his counsel in the event retroactive benefits were awarded following litigation in federal court. It therefore now falls to me to assess whether $18,753, or 25% of the retroactive benefits award, constitutes reasonable compensation for Kimball's counsel under the various factors discussed in *Gisbrecht* and *Crawford*.

Page 7 - FINDINGS AND RECOMMENDATION

A.      **Character of the Representation**

1.      **Quality of Attorney Performance**

As *Gisbrecht* and *Crawford* both make clear, substandard performance by a legal representative warrants a reduction in a Section 406(b) fee award. *See Gisbrecht*, 535 U.S. at 808; *Crawford*, 586 F.3d at 1151. Here, the evidentiary record does not suggest that Kimball's counsel's performance was in any way substandard. No reduction in the Section 406(b) fee is warranted due to the character of the representation here.

2.      **Dilatoriness**

A Section 406(b) award may properly be reduced if the claimant's attorney caused an excessive delay resulting in an undue accumulation of past-due benefits. *See Gisbrecht*, 535 U.S. at 808; *Crawford*, 586 F.3d at 1151. Here, counsel sought only one extension of time for less than 30 days, a minor delay. I therefore do not reduce the requested fee based on undue delay.

B.      **Proportionality of Benefits Awarded to Attorney Time Spent**

The *Gisbrecht* and *Crawford* courts both held that a Section 406(b) award could be reduced if the benefits awarded to the Social Security claimant were out of proportion to the time spent by the claimant's attorney. *See Gisbrecht*, 535 U.S. at 808; *Crawford*, 586 F.3d at 1151. Although neither court's opinion provides significant guidance as to how to measure such disproportionality, *Gisbrecht* established, *see* 535 U.S. at 808, and *Crawford* affirmed, *see* 586 F.3d at 1151, that records of attorney time expended and a statement of the attorney's normal hourly fee in non-contingent matters could be considered in this connection, but only as an "aid" in assessing the reasonableness of the award provided in the contingency fee agreement.

Considered in isolation, the product of the lodestar calculation can at best be of extremely

limited utility in assessing the reasonableness of a contingency fee. The lodestar method of

calculating fees is designed for use where it is intended that an attorney be compensated strictly

for time expended and not on the basis of results achieved, milestones reached, or any of the

myriad other bases by which clients may permissibly compensate their legal representatives, and

where the probability of nonpayment is both low and unrelated to the attorney's ultimate success

or failure. By contrast, the method authorized under Section 406(b) is one designed to

compensate attorneys commensurately with results achieved. As a matter of logic, the fact

(standing alone) that a fee calculated according to the lodestar method differs from a fee

calculated according to a contingency fee agreement is uninformative as to whether the

contingency fee might be disproportionate.

Approaching the question from first principles, it is clear that the disproportionality

analysis can have nothing to do with the absolute amount of the Section 406(b) fee requested,

since that fee is always a maximum of 25% of the retroactive benefits award, and must

necessarily address primarily the effective requested hourly rate that may be back-derived by

dividing the putative contingency award (excluding applicable reductions) by the number of

hours spent in pursuing it. Although that effective requested hourly rate cannot usefully be

directly compared to a reasonable hourly fee to determine its proportionality, it is logically

defensible to posit, at least in the abstract, that an effective requested hourly rate is not

disproportionately high if it is less than or equal to the product of a reasonable hourly rate for

non-contingent matters and the reciprocal of the pre-litigation probability that litigation would

lead to a favorable result, based on the particular facts presented in a given case.[1]  That is, an effective requested hourly rate cannot be disproportionately high if it does not overcompensate an attorney for the risk that attorney assumed at the time the representation was undertaken that the attorney would ultimately receive no compensation for his or her services.  An attorney is not overcompensated for such risk if the pre-litigation expected value of the representation – the probability of a favorable result times the compensation that would be received in the event of a favorable result – does not exceed the product of the appropriate hourly rate and the expected number of hours required.

In addition to giving cognizable effect to the *Gisbrecht* court's suggestion that an attorney's normal hourly rate could bear materially on the disproportionality analysis and the *Crawford* court's suggestion that case-specific risk could be a material factor in assessing the reasonableness of a Section 406(b) fee, measuring the relationship between a reasonable hourly fee for non-contingent matters and the effective requested hourly rate by reference to the case-specific risk of an unfavorable result has the benefit of suggesting a potentially useful metric for assessing proportionality:  a contingency fee award is disproportionately high where it disproportionately overcompensates for the pre-litigation risk of an unfavorable result.  Necessarily, however, this metric leaves at least two open questions:  how is pre-litigation risk to be determined?  And by what proportion may an award overcompensate risk without becoming disproportionate?

---

[1]  Thus, if $100 is a reasonable hourly rate of compensation for non-contingent matters, an effective requested hourly rate would not be disproportionate in light of the risk a particular contingency matter presented if, *e.g.*, the effective requested hourly rate did not exceed $400 where the probability of a favorable outcome was 25%, or one in four.

Despite these unanswered questions, I conclude that the proposed metric is of at least potential utility in assessing the reasonableness of Section 406(b) fee awards under the current state of applicable case law. As the *Gisbrecht* court noted, the "district courts are accustomed to making reasonableness determinations in a wide variety of contexts," 535 U.S. at 808, and widespread adoption of the metric would permit the development of benchmark values for determining the proportionality of risk mitigation. I therefore assess the proportionality of the fee requested in this action to the time expended in litigation by reference to the metric outlined above.

Kimball provides documentary evidence of his counsel's time expenditures consisting of 20.65 hours of attorney time in this case and 25.90 hours of attorney time in the prior case, totaling 46.55 hours altogether. (Memo. in Supp., #27, Ex. B.) To give effect to the contingency fee arrangement in place between Kimball and his counsel would thus yield an effective hourly rate of $402.86 (the quotient of $18,753.00 and 46.55 hours is $402.86 per hour).

Kimball does not advise the court as to his counsel's normal hourly rate, if any, for non-contingent matters. I nevertheless take judicial notice that the Oregon State Bar Economic Surveys provide information as to rates prevalent in various Oregon legal communities in the years in which survey data are collected. I further take judicial notice that the Oregon State Bar 2007 Economic Survey provides information as to rates actually charged by Oregon attorneys in 2006. According to the 2007 Economic Survey, the median hourly rate charged by Portland-area attorneys practicing in "other" areas of private practice in 2006 was $222. Even without adjusting for inflation since 2006, and instead using $222 as the rate for benchmark comparison purposes as to all years in which attorney time was expended, the effective requested hourly rate

Page 11 - FINDINGS AND RECOMMENDATION

of $402.86 is the equivalent of only 1.81 times the estimated reasonable hourly rate for non-

contingent matters.  The reciprocal of 1.81 is 0.55; thus, conservatively, the requested fee award

would be clearly proportionate to the time spent if there was a 45% or greater pre-litigation risk

of an adverse result.

Ideally, a 406(b) fee petitioner would provide in support of his or her petition, in addition

to evidence of the total retroactive benefits award, a contemporaneously prepared record of time

expended, a copy of the operative fee agreement, and a statement of the attorney's normal hourly

fee in non-contingent matters, some statement of the attorney's pre-litigation assessment of the

risk the attorney undertook, in agreeing to represent the Social Security claimant, that an

unfavorable result would occur, resulting in no compensation for the attorney's services.  Here, I

have been provided with no information as to Kimball's counsel's pre-litigation assessment of the

risk presented by his Social Security claim.  However, Kimball offers the statistic, apparently

derived from the data used by the Supreme Court in *Gisbrect*, that claimant-unfavorable results

occur in approximately 66% of all Social Security court cases.  From my own perspective as the

judge to whom Kimball's second request for judicial review was presented, I would rate

Kimball's claim as somewhat more risky than the average Social Security claim.  However,

because every legal action necessarily carries a degree of risk, and because every Social Security

claimant faces a difficult burden in overcoming the deference to which an Administrative Law

Judge's decision is entitled, I would estimate the risk of an unfavorable outcome that Kimball's

counsel undertook at the initiation of representation at well above 45%.  On that basis, I conclude

that compensation at an effective hourly rate of $402.86 would not disproportionately

overcompensate Kimball's counsel for the risk his Social Security claim presented.  I therefore

conclude that reduction is not warranted in connection with the proportionality factor, taking into account the case-specific risks and the appropriate normal hourly rate for non-contingent matters.

C.      **Appropriate Fee**

For the foregoing reasons, I find that the contingency fee agreement in place between Wilson and her counsel is within the statutory limits provided in 29 U.S.C. § 406(b).  Kimball's motion for approval of Section 406(b) fees should therefore be granted, and Kimball's counsel awarded $18,753.00 as a reasonable attorney's fee, less the EAJA fees of $7,834.78 already received, for a net total fee of $10,918.22.

## CONCLUSION

For the reasons set forth above, I recommend that Kimball's motion (#26) be granted, and that payment to Kimball's counsel of $10,918.22 out of Kimball's retroactive benefits awards be approved.

//

//

//

//

//

//

//

//

//

//

Page 13 - FINDINGS AND RECOMMENDATION

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this *16th* day of October, 2012.

Honorable Paul Papak
United States Magistrate Judge